## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **POLLY HOPPER,** | § | |
| **(BOP No. 77629-051),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-CV-1208-P** |
| | § | |
| **OFFICER BLAIRE, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## OPINION and ORDER OF PARTIAL DISMISSAL
## UNDER 28 U.S.C. §§ 1915A & 1915(e)(2)(B)

This case is before the Court for review of pro-se inmate/plaintiff Polly Hopper's pleadings under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). After reviewing the amended complaint and more definite statement, the Court finds that the bulk of Hopper's claims must be dismissed, and that Hopper will be authorized to serve a remaining claim upon one defendant.

## BACKGROUND/PLAINTIFF'S PLEADINGS

Hopper initiated this suit by filing a handwritten complaint. Compl. 1-3, ECF No. 1. In response to a Court order, Hopper completed a prisoner civil-rights complaint form as an amended complaint. Am. Compl. 1-7, ECF No. 5. In the amended complaint, Hopper names as defendants FMC-Carswell Food Service Officers Blaire and Shimpchic, and FMC-Fort Worth Counselor A. Gardner. Am. Compl. 3, ECF No. 5. In her statement of claim, Hopper writes:

At work in Food Service I made a statement "They want us (American) to go

to Spanish school bu the Spanish won't go to English School." Another girl
said "You have to say eggs in English" but she didn't get fired by Ms. Blaire
like I did. I went to the head of Food Service Mr. Shimpchic and he told me
to resolve the issue with Administrative remedy. A Gardner, my counselor
refused to give me the paperwork to file. Ms. Gardner also put my health at risk
by placing me with dying Covid-19 inmates (Maria Neba).

Am. Compl. 4, ECF No. 5. As to defendant Blaire, Hopper also writes that she "discriminated

against me, fired me based on another inmate's word - heresay." *Id*. at 3. With regard to

defendant Shimpchic, Hopper contends that he "refused to resolve the issue [and] directed

me to A. Gardner to file an administrative remedy." *Id*. And, as to Gardner, Hopper contends

that she would not provide the form to file an administrative remedy, and placed her in a "high

risk room" due to Covid-19 that, because she is "66 and very sick," subjected her to a "high

risk of death if [she] got Covid again." *Id*.  In the amended complaint, Hopper sought to be

returned to her previous prison job, she sought to be socially distanced from COVID-19

patients, and she sought to be placed in FMC-Carswell's Chronic Care 5 Unit. Am. Compl.

4, ECF No. 5.

The Court then issued an order for more definite statement, directing plaintiff Hopper

to provide answers to the Court's particular questions in a more definite statement. With

regard to whether she intended in the "statement of claim" portion of her amended complaint

to assert a violation of constitutional or federal right, Hopper did not identify any such

violation, claiming rather that she was "unable to address her grievance about [being] unfairly

discriminated against." More Definite Statement (MDS) ¶ 1(A), ECF No. 12. Likewise, when

asked whether her claims against Blaire involved a violation of a constitutional or federal

2

right, Hopper again wrote only that Blaire refused to help her resolve the incident. She also writes that Blair "fired [her]" resulting in lost prison income, but she did not know what "laws were violated," but felt discriminated against. MDS ¶ 2, ECF No. 12. With regard to defendant Shimpchic, when asked if he had "caused a violation of her constitutional of federal rights," Hopper answered only that Shimpchic "affirmed Blaire's decision without investigation." *Id* at ¶ 3. As to defendant Gardner, Hopper wrote more extensively:

> A prisoner has a right to have their grievances addressed, I don't know what law Ms. Gardner . . . violated but she couldn't help me and I couldn't get an Administrative Remedy.
>
> Ms. Gardner was deliberately indifferent to my serious medical condition and due to my comorbidities I am disabled. I don't know what laws she violated . . . but it could be the 8th Amendment, the American with Disabilities Act or the 504 Rehabilitation Act.
>
> Ms. Gardner refused to to move me from a room where I was physically assaulted by a COVID infected inmate who spit on me twice.  Due to room changes only permitted once a year, regardless of the situation, this inmate was probably the one who got me infected, then she moved me to the hospital with Maria Neba who was severally [sic] suffering and effentially [sic] Maria Neba died. I have had trauma, heart damage, lung damage but the institution does not provide post COVID care other that sick call which charges 2.00. I am a chronic care level 3 inmate that should get free chronic care visits. I feel I should have been  quarantined at the beginning of the COVID outbreak due to my severe medical issues. They just left me in a room with COVID infected inmates.

MDS ¶¶ 4-6, ECF No. 12.

## LEGAL STANDARD OR REVIEW UNDER § 1915A and § 1915(e)(2)(B)

Plaintiff Hopper is an inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from a governmental entity, her pleadings are subject to

preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because Hopper is proceeding *in forma pauperis*, her pleadings are also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim that falls under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice to state a claim upon which relief may be granted. *Id.*

## ANALYSIS

**A.      No Claim under the American Disabilities Act ("ADA")**

As noted, Hopper refers to the American with Disabilities Act ("ADA") with respect to her claim against Counselor Gardner. The ADA "forbids discrimination against persons with disabilities in three major areas of public life:" (1) employment (Title I); (2) public services, programs, and activities (Title II); and (3) public accommodations (Title III). *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). The Court construes Hopper's reference to the ADA as a claim under Title II. MDS ¶ 5, ECF No. 12. As noted, that section prohibits discrimination against the disabled by a public entity. 42 U.S.C. §§ 12131-12165. The definition of "public entity" in the ADA, however, does not include the federal government. 42 U.S.C. § 12131(1)(A)-(B) (defining public entity as only a State or local government or department of agency of a State or local government). Title II of the ADA has therefore been found to not cover the BOP. *Chamberlain v. Chandler*, 344 F. App'x 911, 913 (5th Cir. 2009) (affirming dismissal of ADA claims against Bureau of Prisons on the basis that ADA is not applicable to the federal government); *Marlin v. Alexandre*, 254 F. App'x 374, 375 (5th Cir. 2007) (same); *see also Phillips v. Tiona*, 508 F. App'x 737, 752 (10th Cir. 2013) ("Title II of the ADA does not apply to federal prisoners in federal prisons . . . .").

Furthermore, the Fifth Circuit recognized that the ADA does not permit public employees to be sued in their individual capacities. *See Nottingham v. Richardson*, 499 F. App'x 368, 376  n.6 (5th Cir. 2021) ("We held in *Lollar* that only the public 'entity' was amenable to suit under the RA . . . .") (citing *Lollar v. Baker*, 196 F. 3d 603 (5th Cir. 1999));

*Golden v. Longview, Public Works*, Div., No. 6:20-CV-620-JDK-JDL, 2021 WL 2827486,

\* 2 (E.D. Tex. May 26, 2021) (recognizing "under the ADA [individual named defendants]

cannot be sued in their individual capacities as individual liability does not exist under the

ADA"); *see also Marlin v. Davee*, No.1:07-CV-131, 2009 WL 2970513, at \*5 (E.D. Tex.

2009) ("[T]he Fifth Circuit has determined that plaintiff may not sue either individual

defendants or the Bureau or Prisons under the ADA in a recent decision in another case

involving this plaintiff . . . .") (citing *Marlin v. Alexandre*, 254 F. App'x 374, 375 (5th Cir.

2007)).

Therefore, Plaintiff Hopper cannot maintain an ADA lawsuit against the Bureau of

Prisons or individual defendant Gardner. As no defendant is amenable to suit under the ADA,

Hopper's ADA claim must be dismissed.

**B.    No Claim under the Rehabilitation Act of 1973**

Hopper also includes a reference to Section 504(a) of the Rehabilitation Act ("RA"),

29 U.S.C. § 794(a). That law provides that no qualified individual with a disability shall be

excluded from participation in, denied benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance, or activity conducted by any

Executive agency. 29 U.S.C. § 794(a). Although the remedy provision of the RA provides

for monetary damages for "any act or failure to act by any recipient of federal assistance or

Federal provider," 29 U.S.C. § 794a(a)(2),  in interpreting this language, the Supreme Court

determined that Congress only intended to waive sovereign immunity against monetary

damages for the "narrow category of § 504(a) violations committed by federal funding

agencies acting as such-that is, by Federal provider[s]." *Lane v. Pena*, 518 U.S. 187, 192-93 (1996).  In other words, because the remedy provision did not make reference to any "programs or activities," the Supreme Court declined to read the phrase "Federal provider" to include a waiver of damages for anything more than funding activities. *Id.* at 193.

Furthermore, the Fifth Circuit has held that an individual may not be sued in his or her individual capacity under the Rehabilitation Act. *See Comeaux v. Thaler*, Civ. No. H-01-1411, 2008 WL 818341, at *18 (S.D. Tex. Mar. 24, 2008) (noting "the Fifth Circuit . . . has recognized that a plaintiff cannot sue an individual under the Rehabilitation Act, 29 U.S.C. § 794(a)") (citing *Lollar*, 196 F.3d at 609). Therefore, any claim by Hopper under the Rehabilitation Act must be dismissed.

## C.  No Viable Claims against Officer Blaire and Mr. Shimpchic

As explained above, plaintiff Hopper set forth her claims on a complaint form and attachment pages as an amended complaint. ECF No. 5. In that document she provided a statement of claim against defendants Blaire, Shimpchic, and Gardner. But when the Court asked her to state in her more definite statement whether she alleged any violation of the Constitution or federal law, and how she was harmed, she wrote only that "I was unable to address my grievance about unfairly discriminated against and suffered loss of income which prevents me from getting medical and dental sick call due to the changes that incur."  MDS ¶ 1, ECF No. 12.  Hopper did not claim any constitutional violation and did not claim any violation of federal law.  Likewise, when asked what right was violated by her claim that Officer Blaire "discriminated" against her, Hopper wrote only that "I feel she discriminated against

7

me" by not resolving the incident (with the other food service workers). MDS ¶ 2, ECF No. 1. Thus, the Court finds that as to Officer Blaire, Hopper has wholly failed to state a claim upon which relief may be granted.

Likewise, as to defendant Shimpchic, in response to the Court's question as to whether Shimpchic caused a violation of her constitutional or federal rights, Hopper wrote: "He affirmed Blaire's decision without investigation, I felt I was unfairly discriminated against." MDS ¶ 3, ECF No. 1. Having included nothing more that this conclusory allegation, the Court also finds that Hopper has not asserted a claim upon which relief may be granted against defendant Shimpchic.

Alternatively, and in spite of the lack of assertion of an equal protection violation, the Court will review Hopper's claims of "discrimination" against Blaire and Shimpchic as a claim under the law applicable to the equal protection clauses of the Constitution. "The Fifth Amendment applies to the federal government a version of equal protection largely similar to that which governs the states under the Fourteenth Amendment." *Rodriguez-Silva v. INS*, 242 F.3d 243, 247 (5th Cir. 2001); *see also Richard v. Hinson*, 70 F.3d 415, 417(5th Cir. 1995) ("We employ the same test to evaluate alleged equal protection violations under the Fifth Amendment as we do under the Fourteenth Amendment") (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 215-17 (1995))(other citation omitted). The Supreme Court has recognized that it's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) (citing *Schlesinger v. Ballard*, 419 U.S. 498 (1975);

8

*Jimenez v. Weinberger*, 417 U.S. 628, 637 (1974); and *Frontiero v. Richardson*, 411 U.S. 677 (1973)).

An equal-protection violation may occur when the government treats someone differently than another who is similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to show a violation of her equal protection rights, plaintiff Hopper must show purposeful discrimination resulting in a discriminatory effect among persons similarly situated. *McCleskey v. Kemp*, 481 U.S. 279, 292, 298 (1987); *see also Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992). She must allege the "existence of purposeful discrimination, which implies that the decision maker selected a particular course of action at least in part because of the adverse impact it would have on an identifiable group." *Cotton v. Booker*, 166 F.3d 341 (5th Cir. 1998) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir. 1997)). Hopper has not alleged that she was subjected to a discriminatory action on the basis of race, religion or other suspect class, and her claim that she was treated differently than other similarly situated inmates does not support an equal protection claim.

Thus, the Court finds that Hopper has not stated a viable equal protection claim against defendants Blaire or Shimpchic, and to the extent she implicitly seeks such relief, her claim must be dismissed.

## D.    Claims against Officer Gardner

As noted, Hopper contends that Counselor Gardner violated her right to have her grievances addressed by not assisting her in obtaining the forms to pursue her administrative

remedies. MDS ¶ 4, ECF No. 12.  Congress requires inmates to exhaust their "administrative remedies as are available . . . ." 42 U.S.C. § 1997e(a).  A prison system is not, however, required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b). Thus, allegations of a delay or denial in the processing of a grievance do not support a constitutional violation. As the United States Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers:*"[ An inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. Mar. 15, 2002) ("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) and *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir.1996)). Another district court thus explained "Congress established the exhaustion requirement to give prison and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedure." *Stafford v. McKay*, CA No. 5:10-CV-35, 2010 WL 4274758, at *9 (E.D. Tex. Sept. 27, 2010), *rep. and rec. adopted,* 2010 WL 4286162 (Oct. 28, 2010).

Thus, Hopper's claims against Counselor Gardner for failing to act upon her request for assistance in resolving her administrative remedies must be dismissed.

10

## SERVICE OF REMAINING CLAIM

Hopper also has a claim against Counselor Gardner for deliberate indifference to her serious medical needs under the Eighth Amendment. MDS ¶¶ 5-6, ECF No. 12. On the facts presented by Hopper at this stage of the proceeding, the Court finds that Hopper has alleged enough facts to warrant requiring a responsive pleading from defendant Gardner on this one remaining claim. Thus, the Court will allow service of Hopper's remaining claim upon Gardner through the assistance of the officers of the Court under 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3). *See Rochon v. Dawson*, 828 F.2d 1107, 1109-1110 (5th Cir. 1987).[1]

## CONCLUSION & ORDER

It is therefore **ORDERED** that all of plaintiff Polly Hopper's claims for relief, except for one claim against Counselor Gardner for deliberate indifference to her serious medical needs under the Eighth Amendment, are **DISMISSED WITH PREJUDICE** under authority of 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(ii).

**SO ORDERED** this **27th day** of **July, 2021.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[1] A separate order will issue regarding service of the pleadings upon defendant Gardner.