UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**POLLY HOPPER,**
**(77629-051),**
   **Plaintiff,**
v.               Civil No. 4:20-CV-1208-P

**A. GARDNER,**

   **Defendant.**

## MEMORANDUM OPINION & ORDER

  This case was filed by Bureau of Prisons ("BOP") inmate/plaintiff Polly Hopper ("Hopper") asserting claims against several individual defendants associated with FMC-Carswell. Am. Compl. 1-2, ECF No. 5; More Definite Statement ("MDS"), ECF No. 12. By Opinion and Order of Partial Dismissal and Federal Rule of Civil Procedure 54(b) Judgment, the Court resolved all claims against all defendants under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), except Hopper's claim against FMC-Carswell correctional counselor, Aimee Gardner. Order and Judgment, ECF Nos. 13, 14. Now pending is the motion to dismiss of defendant Gardner (ECF No. 24), along with Hopper's response with incorporated motion for appointment of counsel (ECF No. 27), and Gardner's reply. ECF No. 28. After considering the relief sought by Hopper, the record, briefing and applicable law, the Court finds that Gardner's motion to dismiss must be granted and Hopper's motion for appointment of counsel must be denied, such that Hopper's remaining claims against Aimee Gardner will be **DISMISSED with prejudice**.

## BACKGROUND/PLAINTIFF'S PLEADINGS

  Hopper[1] initiated this suit by filing a handwritten complaint. Compl. 1-3, ECF No. 1. In response to a Court order, Hopper completed a prisoner civil-rights complaint form as an amended complaint. Am. Compl. 1-7, ECF No. 5. As noted

---

[1] Hopper is at FMC-Carswell serving a 292-month sentence after a federal jury convicted her in 2015 of two counts, conspiring to violate 18 U.S.C. § 1201(a)(1) (kidnaping), and kidnaping in violation of 18 U.S.C. § 1201(a)(1). Judgment, *United States v. Hopper*, No. 2:14-CR-2130, ECF No. 212 (Oct. 27, 2015).

above, at the Court's direction, Hopper then filed a more definite statement, which states more detail of her particular claims against defendant Gardner. MDS 1-3, ECF No. 12. The allegations in both of these pleadings compose Hopper's remaining claims against Gardner.

In 2020, Polly Hopper was housed at FMC-Carswell in the "2 North" unit. MDS (Hoper Declaration) 3, ¶ 3, ECF No. 12. Aimee Gardner was alleged to be the correctional counselor "in charge of roommates." Am. Compl. 3, ECF No. 5. Numerous inmates within the 2 North unit "got sick" "from COVID." *Id.* at 4

At FMC-Carswell, "[e]ach inmate is assigned to a housing unit. A unit is a self-contained inmate living area that includes both housing sections and office space for unit staff.[2] The unit staff typically includes a . . . Correctional Counselor" among other staff members. *Id*. at 5. Correctional counselors are responsible for helping resolve "personal difficulties" and for overseeing "programs relating to inmate activities." *Id*. at 5. Correctional counselors are also responsible for providing inmates Administrative Remedy forms (BP-9s) when requested, and correctional counselors accept BP-9s and deliver them to the Administrative Remedy Coordinator. *Id*. at 34.

Hopper avers that she was at higher risk for severe illness from COVID-19 because she is over "65 years old with high blood pressure, asthma, 2 heart stents [,] a hernia and other ailments that [require] 14 different . . . medication [s]." MDS 3 (Hopper Declaration), ¶ 2, ECF No. 2.  Hopper also alleges "Gardner refused to remove [her] from a room where [she] was physically assaulted by a COVID infected inmate who spit on [her] twice." MDS 2, ¶ 6, ECF No. 12.

Hopper further alleges that she tested positive for COVID-19 on July 6, 2020. MDS 3 (Hopper Declaration), ¶ 3, ECF No. 12.  She also reports, however, that she was asymptomatic. MDS 1, ¶ 1(B), ECF No. 12. After Hopper tested positive, she moved to the hospital unit with another inmate (identified as "MN") who was "sever[e]ly suffering" from COVID-19 symptoms and "e[ventu]ally . . . died." *Id.* at

---

[2] See FMC-Carswell, Admission & Orientation Handbook 4 (October 2016), https://www.bop.gov/locations/institutions/crw/crw_ao_handbook_eng_050117.pdf (last accessed March 9, 2022). The Court takes judicial notice of the FMC Carswell, Admission & Orientation Handbook. See Fed R. Evid. 201(b)(2) and (c)(1); *see, e.g.*, *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 871 (S.D. Tex. 2020) ("[G]overnmental websites are proper sources for judicial notice" "without converting a motion to dismiss into a motion for summary judgment." (citing *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005))).

2, ¶ 6. At the time, the Centers for Disease Control and Prevention (the CDC) was advising correctional facilities to house individuals with confirmed COVID-19 together as a cohort when individual isolation could not be attained.[3] Hopper's allegations are consistent with the then applicable CDC guidelines. *See* Am. Compl. 3, ECF No. 5 ("I was placed in high risk rooms due to COVID-19 . . ..").

Hopper also alleges that Gardner "put my health at risk by placing me with dying COVID inmates" like MN. *Id.* at 5. Hopper asserts that she has suffered unspecified "trauma" as well as "heart damage [and] lung damage" "post COVID." MDS 2, ¶ 6, ECF No. 12. Hopper seeks injunctive relief that she be kept "[s]ocially distant" from other inmates and "placed in the hospital's CC5 unit" so that she can more easily access medical care. *Id*. ¶ 8.

## LEGAL STANDARD

Counselor Gardner moves to dismiss plaintiff Hopper's remaining claims for relief on the basis that she has failed to state claims of a violation of a constitutional right, such that she fails to state a claim upon which relief may be granted and is thus subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty, Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine

---

[3] Centers for Disease Control & Prevention, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, 13 https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#correctional-facilities (last accessed March 9, 2022). *See, e.g., Cicalese*, 456 F. Supp. 3d at 871 (taking judicial notice of government websites without converting a motion to dismiss to a motion for summary judgment).

only the allegations within the four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted)). Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-680. If the pleadings fail to meet the requirements of *Iqbal* and *Twombly* no viable claim is stated and the pleadings are subject to dismissal.

### ANALYSIS

A. **No Eighth Amendment claim of Deliberate Indifference to a Serious Medical Need**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST., amend. viii. The Supreme Court has held that "deliberate indifference to serious medical needs" of prisoners may constitute "the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (citation omitted). To plead an Eighth Amendment violation, Hopper

must establish "deliberate indifference to serious medical needs." *Id.* at 104. Deliberate indifference requires criminal recklessness, meaning "the official kn[ew] of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

To establish deliberate indifference to a prisoner's medical needs, Hopper must show (1) "objective exposure to a substantial risk of serious harm," (2) "the officials' subjective knowledge of this substantial risk," (3) "the officials, despite their actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment," and (4) "the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain." *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

"In evaluating a prison's response [to the COVID-19 pandemic], deliberate indifference cannot be inferred from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021) (quoting *Thompson v. Upshur Cnty. Tex.*, 245 F.3d 447, 459 (5th Cir. 2001) and citing *Williams v. Banks*, 956 F.3d 808. 811 (5th Cir. 2020)). "It requires a showing of a wanton disregard for the prisoners' safety or recklessness." *Id.* (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2001). The focus of the inquiry is whether the prison official "recklessly responded to the risk of COVID-19" and "subjectively knew of substantial risks of harm" to the inmate. *Id.* at 282. Moreover, prison officials respond reasonably if they adopted "safety measures in accordance with the CDC guidelines," including the "CDC Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." *Id.* at 283.

Here, even construing Hopper's pro se pleadings liberally, Hopper failed to plead the second and third elements of deliberate indifference: that Gardner subjectively knew of and disregarded a substantial risk of serious harm by either deliberately treating Hopper incorrectly or withholding necessary medical treatment. *See Petzold*, 946 F.3d at 249. Hopper's pleadings and attached documents do not allege that Gardner subjectively knew of substantial risks of harm to Hopper. Nor do they show that Gardner in particular "recklessly responded to the risk of COVID-19." *Cf. Valentine*, 993 F.3d at 282. On the contrary, Hopper's principal allegation—that

after Hopper tested positive for COVID-19, she was housed with other inmates who had also tested positive—indicates that FMC Carswell was implementing "safety measures in accordance with the CDC guidelines." *See id.* at 283. As noted above, the CDC Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities recognized that correctional facilities with limited space could cohort confirmed cases of COVID-19.

Hopper alleges in her Response that Counselor Gardner knew that "COVID was a substantial risk of serious harm because the institution (FMC Carswell) was in modified operations and had moved two other inmates . . . to the hospital unit to isolate them from a potential COVID outbreak." Resp. 2, ECF No. 27. She acknowledges that she does not know why these two particular inmates were "moved . . . to the hospital." *Id.* Hopper contends in her response that she was housed together with other inmates who had also tested positive for COVID-19 and had symptoms—even though she was asymptomatic. *See id.* at 2–3.

Construed generously, it appears that Hopper's principal complaint continues to be that Gardner knew COVID-19 presented a serious risk to inmates (because "one inmate had already died") in summer 2020 and should have placed Hopper in isolation in the hospital unit, like officials had done with two other inmates, instead of housing Hopper together with "COVID infected inmates." *Id.* at 3. She alleges their failure to isolate Hopper has allegedly caused her "unknown long term effects," which taken together "shows deliberate indifference." *Id.*

The Court determines that Hopper has not plausibly alleged that Gardner subjectively knew that her response to Hopper's individualized risk evidenced "recklessness" or "a wanton disregard for" Hopper's personal "safety." *See Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021). Specifically, Hopper does not allege that Gardner knew (or anyone knew in the summer of 2020) that housing an asymptomatic COVID-19-positive inmate like Hopper together with a symptomatic COVID-19-positive inmate like MN, presented a substantial risk of serious harm to either inmate. Nor has Hopper stated any plausible allegation that Gardner deliberately and indifferently decided against isolating Hopper from other inmates in the summer of 2020 due to her alleged higher risk of severe illness from COVID-19.

As noted above, housing COVID-19 positive inmates together as a cohort was consistent with the then-existing CDC guidance for correctional facilities with limited space. *See Valentine*, 993 F.3d at 283. And in *Valentine,* Fifth Circuit recognized that

prison safety measures implemented "in accordance with the CDC guidelines" was "a reasonable response" to the risks associated with the COVID-19 pandemic. *Id.* Indeed, had Gardner or other BOP officials isolated Hopper (as she now contends should have happened) without substantial justification, those actions could have also been subjected to challenge. In this regard, in other recent correspondence to the Court, Hopper complained that medical isolation for those inmates that have "become infected with COVID" amounts to "inhumane treatment" and "punitive segregation." December 6, 2021 Correspondence to Court 1, ECF No. 26.

In sum, Hopper has not alleged that Gardner was aware of facts "from which the inference could be drawn that a substantial risk of serious harm exists," or that she "also dr[ew] the inference." *See Valentine*, 993 F.3d at 281. Thus, with regard to her claim that Gardner was deliberately indifferent to her serious medical needs under the Eighth Amendment, Hopper has failed to state a claim upon which relief may be granted.

### B. No Eighth Amendment Claim for Failure to Protect

Hopper separately alleges that Gardner failed to protect her from another "COVID infected inmate who spit on [her] twice." MDS 2, ¶ 6, ECF No. 12. In order "to establish deliberate indifference through a failure-to-protect claim, an inmate must show first that [s]he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to [her] need for protection." *See Watson v. Samuels*, No. 1:15-CV-116, 2017 WL 3896360, at *3 (N.D. Tex. Aug. 3, 2017), *rep. and rec. adopted*, 2017 WL 3887912 (N.D. Tex. Sept. 5, 2017) (citations omitted). Although physical assault (spitting while infected with a deadly illness) may present "a substantial risk of serious harm," *id.*, here, Hopper fails to allege either that Gardner subjectively knew that Hopper's roommate was infected with COVID-19 or some other infectious disease before these alleged spitting incidents or that Hopper "relayed any threat of harm to [the] defendant in this case." *See id.* Thus, Hopper "fails to state a clear particularized threat" as required to state a failure-to-protect claim. *See id.*

Thus, with regard to Hopper's separate claim that Gardner failed to protect her from a fellow inmate in violation of the Eighth Amendment also fails to state a claim upon which relief may be granted.

**APPOINTMENT OF COUNSEL**

The Court previously denied Hopper's motion for the appointment of counsel. ECF No. 17. In spite of that prior ruling, incorporated within her response, Hopper included a motion/request that the Court appoint "an attorney . . . to call to witness four [unnamed] FMC Carswell staff members who have direct knowledge of Plaintiffs['] claims." Resp. 2–3, ECF No. 27. Although district courts "may request an attorney to represent any person unable to afford counsel" under the in forma pauperis statute, 28 U.S.C. § 1915(e)(1), "[i]n a civil case, an attorney should be appointed only under exceptional circumstances," *Williams v. Ballard*, 466 F.3d 330, 335 (5th Cir. 2006) (citation omitted). In deciding whether a civil case presents "exceptional circumstances," courts consider:

> 1. "the type and complexity of the case;"
>
> 2. the plaintiff's ability to "adequately . . . present and investigate his case;"
>
> 3. the presence of evidence of "conflicting testimony" that will require "skill in presentation of evidence and in cross examination;" and
>
> 4. the likelihood that the appointment "will benefit" the Court and the parties "by 'shortening the trial and assisting in a just determination.'"

*Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 212, 213 (5th Cir. 1982)).

In this case, even if Hopper's claim of deliberate indifference to her medical need could be said to involve complex factual issues, "that alone does not justify the appointment of counsel." *See Moore v. Crescent Med. Ctr.*, No. 3:16-CV-3362, 2017 WL 635032, at *2 (N.D. Tex. Feb. 16, 2017) (citations omitted). There is no apparent reason why Hopper "cannot adequately research and investigate the case on her own without the Court's taking the exceptional step of appointing counsel." *See id.* at *3. Hopper "has been able to articulate her claims so that the Court can understand them." *See id.* And it is not evident that Hopper "has had difficulties prosecuting her case that are more severe than those experienced by a typical *pro se* litigant." *Id.* And, as the Court has determined that Hopper's allegations do not state viable claims of violations of the Eighth Amendment, her claims will not turn on conflicting testimony at a trial. Therefore, Hopper has not shown that any of the *Ulmer* factors, taken together or individually, support the appointment of counsel in this action.

## CONCLUSION AND ORDER

It is therefore **ORDERED** that Hopper's motion /request for appointment of counsel included within her response (ECF No. 27) is **DENIED.**

It is further **ORDERED** that defendant Aimee Gardner's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 24) is **GRANTED**, such that all plaintiff Hopper's remaining claims against Aimee Gardner are **DISMISSED with prejudice**.[4]

**SO ORDERED** on this **10th day** of **March, 2022.**

*/s/ Mark T. Pittman*
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court has determined that Hopper's only remaining claims of violation of her rights under the Eighth Amendment asserted against individual defendant Gardner fail to state claims upon which relief may be granted, the Court does not reach Gardner's alternative grounds for dismissal.